## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

STATE FARM MUTUAL )
AUTOMOBILE INSURANCE COMPANY, )
)
Plaintiff, )
)
vs. )
)
HENRY AND DOROTHY SELLERS, )
)
Defendants. )
)
************************** )　　NO. 3:10-CV-205
)
HENRY AND DOROTHY SELLERS, )
)
Counterclaimants, )
)
vs. )
)
STATE FARM MUTUAL )
AUTOMOBILE INSURANCE COMPANY, )
)
Counterdefendant. )


## OPINION AND ORDER

This matter is before the Court on: (1) State Farm's Motion
for Summary Judgment, filed by Plaintiff/Counterdefendant, State
Farm Mutual Automobile Insurance Company, on May 9, 2011 (DE #20);
and (2) the Motion for Summary Judgment on Behalf of State Farm in
its Capacity as the Liability Insurer of Lisa Sellers, filed by
Plaintiff/Counterdefendant, State Farm Mutual Automobile Insurance

Company, on May 13, 2011 (DE #24).  For the reasons set forth below, State Farm's Motion for Summary Judgment, filed by Plaintiff/Counterdefendant, State Farm Mutual Automobile Insurance Company, on May 9, 2011 (DE #20), is **GRANTED IN FULL**.  The Motion for Summary Judgment on Behalf of State Farm in its Capacity as the Liability Insurer of Lisa Sellers, filed by Plaintiff/Counterdefendant, State Farm Mutual Automobile Insurance Company, on May 13, 2011 (DE #24), is also **GRANTED IN FULL**.  The Sellers' Counterclaims are **DISMISSED WITH PREJUDICE** in their entirety, and the clerk is **ORDERED** to close this case.

BACKGROUND

On May 21, 2010, State Farm Mutual Automobile Insurance Company ("State Farm") filed a Complaint against Henry and Dorothy Sellers (the "Sellers") related to an insurance policy issued to Henry Sellers ("Henry") by State Farm.  The coverage disputes in question arose after Dorothy Sellers ("Dorothy") was severely injured in an automobile accident.  At the time of the accident, Dorothy was a passenger in an automobile owned and driven by her daughter-in-law, Lisa Sellers ("Lisa"), who was killed in the accident.  That automobile was insured by a separate State Farm policy issued to Lisa and her husband.  The Complaint seeks a declaratory judgment that no coverage is available to Dorothy under either the underinsured or uninsured motorist coverage of the

policy issued to Henry.  The Sellers filed an Answer on July 28, 2010, arguing that State Farm should "take nothing by way of its Complaint for Declaratory Relief," and asserting affirmative defenses of waiver, estoppel, and latches.  In that same document, the Sellers also submitted a Counterclaim alleging breach of contract, tortious breach of the duty to act in good faith, and breach of fiduciary duty claims against State Farm.  State Farm filed an Answer to the Counterclaim on July 30, 2010.  Acting in its capacity as the underinsured/uninsured motorist carrier for the Sellers, State Farm filed a Motion for Summary Judgment on May 9, 2011.  State Farm then filed a Separate Motion for Summary Judgment in its capacity as the liability insurer of Lisa on May 13, 2011. The Sellers filed a Response to both Motions on June 21, 2011, and State Farm filed Reply briefs on July 5, 2011.  The issues in this case have been fully briefed and are ripe for adjudication.

DISCUSSION

The standards that generally govern summary judgment motions are familiar.  Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  In

other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406 (7th Cir. 2009).

According to Rule 56:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A)citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c). Furthermore, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it . . ." Fed. R. Civ. P. 56(e)(2),(3). "Whether a fact is material depends on the substantive law

underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (citing *Anderson*, 477 U.S. at 248).

Where a party bears the burden of proof on a particular issue, the party may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine dispute requiring a trial. *See Beard v. Whitley Cnty. REMC*, 840 F.2d 405, 410 (7th Cir. 1988); *Hickey v. A.E. Stanley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate. In this situation, there can be "no genuine dispute as to any material fact" because a complete failure of proof concerning an essential element of the nonmovants case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 323.

Facts

State Farm has provided a detailed statement of material facts in both of its motions; the Sellers have responded that they do not dispute these facts "[f]or the most part," and they have specifically noted areas where genuine disputes remain. Keeping

this in mind, the Court will set forth the facts as presented, acknowledging the disputes and citing specifically to the record when necessary.

On July 14, 2006, Dorothy was a passenger in a vehicle owned and operated by her daughter-in-law, Lisa, and they were involved in an automobile accident in Wytheville, Virginia. Lisa died in the accident, and Dorothy was severely injured. Lisa had an insurance policy through State Farm, Policy No. 0981-298-14A (the "Lisa Policy"), which covered the automobile involved in the accident. Dorothy was also insured through State Farm under a policy, Policy No. 0669-051-14A, issued to her husband, Henry (the "Henry Policy").

The Lisa Policy had liability coverage limits of $50,000 per person/$100,000 per accident and medical payments coverage with a limit of $5,000. The Henry Policy had liability coverage limits of $100,000 per person/$300,000 per accident, uninsured and underinsured motorist coverage with limits of the same amounts, and medical payments coverage with a limit of $25,000. Under each policy, claims arose related to the injuries Dorothy sustained in the accident; a claim for liability and medical coverage was opened under the Lisa Policy, and a claim for underinsured motorist and medical coverage was opened under the Henry Policy. State Farm representative Dan Miller ("Miller") was assigned to the claims arising under the Lisa Policy, while State Farm representative Lisa

Wellman ("Wellman") was assigned to the claims arising under the Henry Policy. The claim files were maintained separately.

### Activity related to the Lisa Policy

Shortly after the accident, Miller informed Dorothy of the medical payments coverage available under the Lisa Policy; the $5,000 limit of this coverage was subsequently exhausted, and Dorothy was so informed by letter. On October 24, 2006, State Farm, through Miller, offered Dorothy the liability coverage limit of $50,000 under the Lisa Policy; Miller informed Wellman, via a letter dated the same date, of the offer. On October 30, 2006, Miller spoke with Henry about the offer and how it related to the underinsured/uninsured motorist claims. He then sent Henry and Dorothy a letter stating the following:

> As you know, State Farm is able to offer the liability coverage limit of $50,000 in settlement of Dorothy's medical claim. Enclosed is a release which will finalize the settlement. Please sign, date, and return the release in the envelope provided. We will send the check as soon as we receive the release.

(DE #21-2, p. 39.) However, the Sellers never signed and returned the release. (DE #21-1, p. 6; Bishop Dep. at 57.) Miller was later informed that the Sellers had enlisted the services of Attorney Gregory Schlax ("Attorney Schlax"). On December 28, 2006, Miller wrote Attorney Schlax a letter which included the following:

> As you are aware, we have offered our
> liability coverage limit of $50,000 in
> settlement of Dorothy and Henry Sellers [sic]
> claim. Since that time, we have not received
> a response to the offer. If you would, please
> advise the status of the claim and your
> position regarding our offer.

(DE #21-2, p. 38.) Attorney Schlax did not respond, and several months

later Miller was informed that Attorney

Schlax no longer represented the Sellers. On August 29, 2007,

Attorney Michael Bishop ("Attorney Bishop")[1] sent Miller a letter

informing him that he would be representing the Sellers and stating

that "we understand that State Farm is willing to offer its

liability coverage limit of $50,000 in settlement of Dorothy

Sellers' medical claim." (DE #21-2, p. 29.) The letter also

stated that Attorney Bishop was in the process of contacting

various medical providers and insurers related to Dorothy's

outstanding medical expenses and that he would "advise [Miller] of

our progress in resolving this matter with the multiple lien

claimants and how we might reach a final settlement with all

concerned." (*Id.*) Attorney Bishop copied Miller on correspondence

with various lien claimants, and on October 10, 2007, he sent

Miller a letter to provide him "with a status report on the pending

lien negotiations and potential settlement." (DE #21-2, p. 28.)

In this letter he also indicated that he could potentially request

---

[1] The Court notes that Attorney Bishop is currently representing the
Sellers in this matter.

at some future point "that State Farm commence an inter pleader action." (*Id.*) Attorney Bishop ultimately did not make that request of State Farm, and Miller never indicated that State Farm had a corporate policy against interpleader actions. In April and June of 2008, Attorney Bishop copied Miller on letters he sent to the various lien holders discussing the potential allocation of settlement proceeds.

The statute of limitations for any of the Sellers' tort claims against Lisa as related to the accident expired on July 14, 2008. No actions were filed by this date, nor had the Sellers signed or returned the release form regarding the settlement offer. (DE #21-1, p. 6; Bishop Dep. at 54 & DE #21-1, p. 6; Bishop Dep. at 57.) Thus, State Farm closed the claims under the Lisa Policy.

On July, 29, 2009, Attorney Bishop copied Miller on a letter to the lien holders describing a "breakthrough in . . . settlement discussions," and "offer[ing] the following settlement proposal to resolve all pending claims against the State Farm combined policy limits of $100,000." (DE #21-2, p. 21.) This was the first communication between Attorney Bishop and State Farm in over a year. Miller informed Attorney Bishop on August 6, 2009, that the settlement proposal would be sent to State Farm's attorney for review, as the statute of limitations had run on claims against Lisa as the tortfeasor. After being copied on additional correspondence from Attorney Bishop to the various lien holders,

Miller wrote to Attorney Bishop on December 18, 2009, and again informed him that "the statute of limitations has passed some time ago without suit being filed. Our position is that your client no longer has a claim because of the statute of limitations." (DE #21-2, p. 37.) Attorney Bishop responded on January 28, 2010, by writing a letter stating that State Farm previously made a settlement offer to the Sellers in August of 2007 which was "accepted with the only outstanding issue being the negotiation of the Parkview Hospital lien and the Medicare lien" and that "State Farm has been fully aware since August of 2007 that we were accepting the full amount of State Farm's liability coverage limits." (DE #21-2, p. 14.) State Farm disagrees that the offer[2] was ever accepted, and the Court notes that the Sellers point to no evidence in the record to support Attorney Bishop's claim that State Farm was aware of the "acceptance" by the Sellers. In fact, as noted above, it is undisputed that neither the Sellers, nor any attorney on their behalf, signed or returned the release sent along with State Farm's offer. In his letter, Attorney Bishop also asserted that:

> more than settlement negotiations occurred in this case. This case was settled and the only outstanding issue was the negotiation of the liens. I did not file a lawsuit based on

[2] In his letter, Attorney Bishop references a settlement offer of $100,000, but according to the evidence in the record, the only offer State Farm made the Sellers was for $50,000 under the Lisa Policy's liability coverage.

> State Farm's conduct and proceeded with
> negotiations of the liens. State Farm never
> indicated it would raise a statute of
> limitations defense until December 15, 2009.
> Under Indiana law, the conduct of State Farm
> led my office to inaction and we did not file
> the lawsuit because the matter was settled.
> Therefore, State Farm is estopped from raising
> the statute of limitation defense.

(*Id.* at 15.)

### Activity Related to the Henry Policy

In the month following the accident, Wellman informed the Sellers by letter that medical payments coverage of up to $25,000 was available to Dorothy under the Henry Policy and that it was "possible the other driver may be underinsured or is not insured. If so, your Uninsured or Underinsured Motorist Coverage may be applicable." (DE #21-3, p. 10.) The $25,000 limit for medical payments coverage was subsequently exhausted. After learning that Miller had offered the Sellers $50,000 under the Lisa Policy's liability coverage limits to settle their claims, Wellman informed Miller via letter that the Henry Policy was "giving you permission" to settle the claims as offered. (DE #21-3, p. 13.) Wellman sent a letter to the Sellers on October 24, 2006, wherein she gave Dorothy permission to accept the settlement offer of $50,000 from the Lisa Policy but noted that the decision was "not an admission of liability and that we specifically reserve any defense we may have regarding liability and damages." (DE #21-3, p. 14.)

Almost a year later, Wellman received a letter from Attorney Bishop which indicated that he was now representing the Sellers pursuant to their claim under the Henry Policy and that "we understand that State Farm is willing to offer its liability coverage limit of $50,000 in settlement of Dorothy Sellers' medical claim." (DE #21-2, p. 29.) The letter also stated that Attorney Bishop was in the process of contacting various medical providers and insurers related to Dorothy's outstanding medical expenses and that he would "advise [Wellman] of our progress in resolving this matter with the multiple lien claimants and how we might reach a final settlement with all concerned." (*Id.*) On September 6, 2007, by letter, Wellman informed Attorney Bishop that "underinsured motorist coverage [was] available" under the Henry Policy for Dorothy. (DE #21-3, p. 18.) The provisions for "Underinsured Motor Vehicle" coverage in the Henry Policy state in part:

> We will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *underinsured motor vehicle*. The *bodily injury* must be sustained by an *insured* and caused by an accident arising out of the operation, maintenance or use of an *underinsured motor vehicle*.
>
> THERE IS NO COVERAGE UNTIL THE LIMITS OF LIABILITY OF ALL BODILY INJURY LIABILITY BONDS AND POLICIES THAT APPLY HAVE BEEN USED UP BY A PAYMENT OF JUDGMENTS OR SETTLEMENTS.

(DE #21-3, p. 9) (emphasis in original.) The Henry Policy's "Uninsured Motor Vehicle" provision states in part:

> We will pay for *bodily injury* an *insured* is legally
> entitled to collect from the owner or driver of an
> *uninsured motor vehicle*. The *bodily injury* must be
> sustained by an *insured* and caused by accident arising
> out of the operation, maintenance or use of an *uninsured
> motor vehicle*.

(DE #21-3, p. 8.) The policy defines "uninsured motor
vehicle" as:

> 1. a land motor vehicle, the ownership, maintenance
>    or use of which is:
>    a. not insured or bonded for bodily injury
>       liability at the time of the accident; or
>    b. insured or bonded for bodily injury
>       liability at the time of the accident; but
>       (1) the limits of liability are less
>           than required by the financial
>           responsibility act of the state
>           where your car is mainly garaged; or
>       (2) the insuring company denies coverage
>           or is or becomes insolvent . . . .

(*Id*.) Attorney Bishop sent Wellman a letter on October 10, 2007,
to provide her "with a status report on the pending lien
negotiations and potential settlement." (DE #21-3, p. 19.) In
this letter he also indicated that he could potentially request at
some future point "that State Farm commence an inter pleader
action." (*Id*.) Attorney Bishop ultimately did not make that
request of State Farm, and Wellman never indicated that State Farm
had a corporate policy against interpleader actions. In April of
2008 Attorney Bishop copied Wellman on a letter he sent to a
Medicare contractor which indicated that he was still "attempting
to engage in settlement negotiations." (DE #21-3.)

At this point, Wellman was unaware that State Farm had closed all claims under the Lisa Policy after the statute of limitations had expired and believed that a claim had been filed. (DE #21-3, p. 40; Aff. of Lisa Wellman, ¶ 5). As such, on August 18, 2008, she requested Attorney Bishop keep her informed as to the progress of settlement negotiations. (DE #21-3, p. 23.) She sent Attorney Bishop a similar letter on November 19, 2008. (DE #21-3, p. 24.) On July, 29, 2009, Attorney Bishop copied Wellman on a letter to the lien holders describing a "breakthrough in . . . settlement discussions," and "offer[ing] the following settlement proposal to resolve all pending claims against the State Farm combined policy limits of $100,000." (DE #21-3, p. 26.) Wellman was not copied on the original correspondence between Miller and Attorney Bishop regarding the statute of limitations as described above; however, Wellman was copied on Attorney Bishop's response on January 28, 2010, in which he told Miller that "State Farm has been fully aware since August of 2007 that we were accepting the full amount of State Farm's liability coverage limits" and that State Farm was estopped from using the statute of limitations as a defense. (DE #21-3, pp. 32-33.)

Finally, in March of 2010, Attorney Bishop made demands on State Farm for the total amount of the Henry Policy's underinsured/uninsured motorist coverage limit of $100,000, claiming that because of Miller's "refusal to pay the State Farm

liability limits [under the Lisa Policy], State Farm now owes the entire $100,000 under [the Henry Policy's] uninsured motorist coverage." (DE #21-3, p. 37.) Disputing that they owed the Sellers the requested payment, State Farm filed the Complaint for Declaratory Relief before this Court.

## State Farm's Motion for Summary Judgment in its Capacity as the Underinsured/Uninsured Motorist Carrier for the Sellers

State Farm, in its capacity as the underinsured/uninsured motorist carrier for the Sellers, seeks summary judgment in its favor on its request for a declaratory judgment, as well as the Sellers' counterclaims for breach of contract, breach of the duty of good faith, and breach of fiduciary duty. Each will be addressed by the Court.

In Indiana[3], insurance contracts are analyzed using the same rules of construction as ordinary contracts. *Cincinnati Ins. Co. v. Am. Alt-Ins. Corp.*, 866 N.E.2d 326, 332 (Ind. Ct. App. 2007); *Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind. 1985). Insurance contract terms are given their plain, ordinary meaning as

---

[3] Because this Court retains diversity jurisdiction, it is required to apply the substantive law of the forum state. See *Erie R.R. Co. V. Tompkins*, 304 U.S. 64, 78 (1938). The parties do not dispute that Indiana law applies in this case. "Indiana's choice of law rule for contract actions, including actions based upon insurance contracts, is the 'most intimate contacts' test." *Kentucky Nat. Ins. Co. v. Empire Fire and Marine Ins. Co.*, 919 N.E.2d 565, 575 (Ind. Ct. App. 2010) (citation omitted). Here, the Sellers reside in Indiana, and the contract at issue was negotiated and signed in Indiana. Therefore, even though the accident occurred in Virginia, Indiana will apply here.

viewed from the perspective of the insured. *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv.*, Inc., 40 F.3d 146, 151 (7th Cir. 1994); *Masonic Temple Ass'n of Crawfordsville v. Indiana Farmers Mut. Ins. Co.*, 779 N.E.2d 21, 28 (Ind. Ct. App. 2002). Unambiguous clauses in the contract should be enforced, even if the construction limits an insurer's liability. *Cincinnati Ins.*, 40 F.3d at 151; *Eli Lilly*, 482 N.E.2d at 470; *Masonic Temple*, 779 N.E.2d at 27. However, "[w]here an ambiguity exists, that is, where reasonably intelligent people may interpret the policy's language differently, Indiana courts construe insurance policies strictly against the insurer." *Allgood v. Meridian Sec. Ins. Co.*, 836 N.E.2d 243, 247 (Ind. 2005). Ultimately, "[t]he meaning of an insurance contract can only be gleaned from a consideration of all its provisions, not from an analysis of individual words or phrases. We must accept an interpretation of the contract language that harmonizes the provisions rather than the one which supports a conflicting version of the provisions." *Adkins v. Vigilant Ins. Co.*, 927 N.E.2d 385, 389 (Ind. Ct. App. 2010) (citations omitted).

In interpreting the contractual provisions at issue in this case, the uninsured/underinsured motorist statute is also relevant. The Supreme Court of Indiana has held that Indiana Code section 27-7-5-2 is "a mandatory coverage, full-recovery, remedial statute" which is to be "considered a part of every automobile liability policy the same as if written therein." *United Nat. Ins. Co. v.*

*DePrizio*, 705 N.E.2d 455, 460 (Ind. 1999). One purpose of the statute "is to give the insured the recovery he or she would have received if the underinsured motorist had maintained an adequate policy of liability insurance." *Corr v. Am. Family Ins.*, 767 N.E.2d 535, 540 (Ind. 2002). The intent of the legislature is to:

> give insureds the opportunity for full compensation for injuries inflicted by financially irresponsible motorists. Due to the remedial nature of this type of coverage, underinsured motorist legislation is to be liberally construed, and similar to all insurance statutes and policies, is to be read in a light most favorable to the insured.

*Masten v. AMCO Ins. Co.*, 953 N.E.2d 566, 570 (Ind. Ct. App. 2011) (internal quotation marks and citation omitted).


**Underinsured Motorist Coverage**

State Farm asserts that the underinsured motorist coverage of the Henry Policy is not available to the Sellers because two specific conditions precedent to coverage have not been met. First, State Farm asserts that the Sellers are not legally entitled to recover from Lisa because the statute of limitations has run as to actions against Lisa in tort, and the Sellers have failed to file a suit against her to date. Thus, because the underinsured motorist coverage provision of the Henry Policy states that State Farm only need "pay damages for bodily injury an insured is *legally entitled to collect from the owner or driver* of an underinsured motor vechicle" (emphasis added), the underinsured motorist

coverage is no longer available to the Sellers.  The Court agrees.

Indiana law holds that "legally entitled to recover" requires that the insured "establish fault on the part of the uninsured motorist, and establish the amount of his or her damages." *Cincinnati Ins. Co. v. Trosky*, 918 N.E.2d 1, 9 (Ind. Ct. App. 2009), *trans. denied* April 1, 2010.  The statute of limitations for tort claims is two years from the date the cause of action accrues. Ind. Code § 34-11-2-4.  Thus, the Sellers had until July 14, 2008, to file a tort claim against Lisa or her estate for injuries sustained by Dorothy in the automobile accident described above. It is undisputed that the Sellers did not file such an action. Because the statute of limitations has expired, the Sellers are no longer "legally entitled to collect" from Lisa, and, as a result, a condition precedent to receiving payment under the Henry Policy has not been met.  See *Bush v. State Farm Mut. Auto. Ins., Co.*, 905 N.E.2d 1003, 1008 (Ind. 2009).

The Sellers, however, argue in their response brief that State Farm is equitably estopped from using the expiration of the statute of limitations as a reason to deny them coverage pursuant to the Henry Policy.[4]  This is so, they assert, because State Farm's

    [4]  Not only is it procedurally awkward to invoke equitable estoppel in this context, but the Court also notes that it is  problematic in that Indiana courts have held that estoppel must be plead with particularity.  This is true whether the estoppel is used as a cause of action or a defense, and it cannot be generally averred to in an answer.  *Schill v. Choate*, 247 N.E.2d 688, 696 (Ind.App. 1969) ("[E]stoppel . . . must be pleaded with particularity and

conduct led the Sellers to believe that settlement offers would remain open after the statute of limitations had expired and therefore lulled them into inaction. Although the Sellers refer extensively to Miller's conduct on behalf of the Lisa Policy in their response brief, the Court notes that at issue here is whether the conduct of State Farm, in its capacity as the underinsured/uninsured motorist carrier for the Sellers, rises to the level necessary to trigger estoppel. The conduct of State Farm, in its capacity as the liability insurer for Lisa, will be discussed below in terms of its separate motion for summary judgment. See *Brady v. Allstate Indem. Co.*, 788 N.E.2d 916, 920-22 (Ind. Ct. App. 2003).

The doctrine of equitable estoppel is one that sounds in equity. *Davis v. Shelter Ins. Companies*, 957 N.E.2d 995, 997 (Ind. Ct. App. 2011). In general:

> it is a concept by which one's own acts or conduct prevents the claiming of a right to the detriment of another party who was entitled to and did rely on the conduct. In order to assert equitable estoppel against an insurer, the conduct of the insurer must be of a sufficient affirmative character to prevent inquiry or to elude investigation or to mislead and hinder.

---

precision, with every essential fact being set forth, for nothing can be supplied by inference or intendment and, indeed, if there is any ground for inference or intendment, it will be against and not in favor of estoppel.") Nevertheless, in an abundance of caution, the Court will address the Sellers' arguments as they have been framed.

*Id.* at 997-98 (internal quotation marks and citations omitted). *See also Paramo v. Edwards*, 563 N.E.2d 595, 599 (Ind. 1990) ("These factors have often been significant in the reluctance of our courts to apply equitable estoppel to benefit persons represented by counsel."). In *Davis*, the Indiana Court of Appeals recently articulated a two-part test for evaluating equitable estoppel arguments. First, the court must determine whether the insurer: (1) promised to settle the case; (2) deterred the insured from filing suit; (3) discouraged the insured from engaging the services of an attorney; or (4) engaged in "otherwise egregious conduct." *Davis,* 957 N.E.2d at 1001. If the court finds evidence of any of these behaviors, the court must then look to the "totality of the circumstances" to determine whether those circumstances "induced the claimant to delay timely action" and the "claimant's reliance on the insurer's statements or actions was reasonable." *Id*.

Here, nothing in the record indicates that State Farm, the insurer of Dorothy under the Henry policy, discouraged the Sellers from utilizing the services of an attorney or engaged in otherwise egregious conduct. As to a "promise" to settle the case, the record establishes that the Lisa Policy offered its liability coverage limit of $50,000 to Dorothy to settle her claims but that the release form accompanying the offer was never signed by the Sellers or returned to State Farm. There is no evidence in the record to show that the Henry Policy made a settlement offer to the

Sellers.    Instead, State Farm, in its capacity as the underinsured/uninsured motorist carrier under the Henry Policy, simply communicated to the Sellers that underinsured motorist coverage was available and noted that, while Dorothy had permission to accept the settlement offer of $50,000 from the Lisa Policy, the decision was "not an admission of liability and that we specifically reserve any defense we may have regarding liability and damages."   Attorney Bishop did copy State Farm on various letters to medical providers and lien holders related to potential settlements, and Wellman did inquire as to the status of the settlement negotiations, even after the statute of limitations had run as to tort claims against Lisa.    However, none of these communications establish a promise to settle the case.    At most, the evidence in the record indicates that State Farm and the Sellers were involved in ongoing negotiations regarding the outstanding claims; nothing went beyond "mere settlement negotiations."   See *Sprowl v. Eddy*, 547 N.E.2d 865, 867 (Ind. Ct. App. 1989) ("A simple willingness to negotiate is insufficient to constitute such conduct.   Rather, the insurer's conduct or statements during the negotiations process must be of a caliber calculated to lead the other party to inaction to constitute an estoppel. Evidence of such conduct creates an issue of fact as to whether the claimant was lulled into inaction, whereas an absence

of such evidence allows the statute of limitations defense to be disposed of as a matter of law.")

Even if a promise to settle could somehow be construed from the foregoing evidence, the totality of the circumstances does not show that the Sellers were induced by State Farm to delay filing an action against Lisa. There is no evidence that State Farm ever offered to toll the statute of limitations or agreed not to assert a statute of limitations defense related to those claims. Wellman's inquiries as to the progress of the settlement negotiations do not constitute an offer of such. There was no advance payment to the Sellers in consideration of settlement. The Sellers are and have been represented by Attorney Bishop in this matter, and Attorney Bishop admits that he has many years of experience of litigating insurance disputes. Attorney Bishop does not claim that he was unaware of the statute of limitations, nor does he present evidence that he requested State Farm to toll the limitations period or waive it as a defense prior to its expiration. See *Davis*, 957 N.E.2d at 1000 (citing an Illinois case which noted that estoppel is usually found when an insurer concedes liability, makes advance payments to the claimant "in contemplation of the eventual settlement" and encourages the claimant to delay filing an action through its statements).

The Sellers argue that State Farm deterred them from filing suit against Lisa by "their conduct in delaying informing [the]

Sellers that State Farm has a policy against filing interpleader actions." Although it is true that State farm did not inform the Sellers of such policy, it is undisputed that Attorney Bishop never officially requested an interpleader action. The Sellers do not cite to any law suggesting that the failure to inform a party of a policy against possible interpleader actions constitutes conduct sufficient to trigger estoppel in a situation such as this; they argue only that this conduct goes "beyond mere settlement negotiations." For the reasons described above, the Court disagrees; equitable estoppel does not apply.

Next, State Farm asserts that the Henry Policy's underinsured motorist coverage contains an "Exhaustion Clause" which provides that coverage is not available "until the limits of liability of all bodily injury liability bonds and policies that apply have been used up by payment of judgments or settlements." Here, State Farm argues that, while the Lisa Policy did make an offer of its available limits of liability coverage to the Sellers, the offer was not accepted before the expiration of the statute of limitations, no payment was made, and, therefore, the condition precedent necessary for coverage to apply under the Henry Policy did not occur.

It does not appear as though Indiana courts have directly addressed this issue. State Farm urges the Court to look to the plain language of the policy as written and points to a Wisconsin

Supreme Court case in support of its position. See *Danbeck v. American Family Mut. Ins. Co.*, 629 N.W.2d 150, 154 (Wis. 2001) (collecting cases). The Court finds this case instructive. In *Danbeck*, the court cited to the Random House Unabridged Dictionary and held that "[a] 'payment' is "1. something that is paid; an amount paid; compensation; recompense. 2. the act of paying . . . ." *Id*. at 155. It concluded that, as applied to the exhaustion clause in question, the only reasonable meaning of the word "payment" was "compensation paid by the liability insurer and received by the insured." *Id*. The Court agrees that this definition is sound. However, the court in *Danbeck* went on to elaborate that the liability limits must be "expended in total or used up completely" via such payment before the obligation to pay underinsured motorist benefits coverage was triggered. Here, the issue turns not on whether the liability limits were completely (versus partially) used up, but whether any payment (or, as the Sellers argue below, another similar act) was made that would satisfy the necessary condition precedent in the Henry Policy.[5]

The underinsured motorist provision of the Henry Policy contains an exhaustion clause, which, on its face, states that underinsured motorist coverage will not apply until applicable liability policies are "used up **by a payment** of judgments or

---

[5] The Court declines to reach the issue of whether a "partial" payment would be sufficient to trigger the condition precedent.

settlements" (emphasis added). This language unambiguously provides that "payment" of judgments or settlements related to the applicable liability policies must be paid before the underinsured motorist coverage will apply.

Furthermore, this interpretation does not violate the underlying purpose of Indiana's UIM statute which defines an underinsured vehicle as:

> an insured motor vehicle where the limits of coverage available for payment to the insured under all bodily injury liability policies covering persons liable to the insured are less than the limits for the insured's underinsured motorist coverage at the time of the accident, but does not include an uninsured motor vehicle as

Ind.Code § 27-7-5-4(b). The "available for payment to the insured" language has been construed by Indiana courts as follows:

> 'Available' ordinarily means 'present or ready for immediate use.' Thus, 'available for payment to the insured,' when describing coverage limits, is money present or ready for immediate use by the insured, not amounts potentially accessible.

*Corr v. American Family Ins.*, 767 N.E.2d 535, 539-40 (Ind. 2002) (citation omitted). Thus, the language of the Henry Policy, which states that "payment" of available judgments or settlements is necessary before underinsured motorist coverage is available, comports with the UIM and does not violate its intent. See *Auto-Owners Ins. Co. v. Eakle*, 869 N.E.2d 1244, 1249 (Ind. Ct. App. 2007) ("[T]he statute's focus is on placing the insured in the

position he would have occupied if the tortfeasor had liability coverage equal to his UIM limits.")

Here, the record establishes that: (1) the vehicle Lisa was driving at the time of the accident was underinsured; (2) while an offer of $50,000 was made by the Lisa Policy to the Sellers, that offer was not accepted by the Sellers; (3) no payments were made by the Lisa Policy to the Sellers pursuant to the Lisa Policy's liability coverage; and (4) the Lisa Policy is no longer offering its liability limits to the Sellers because the statute of limitations has run as to tort actions against Lisa. Despite these facts, the Sellers cite to *State Farm Mut. Auto. Ins. Co. v. Leybman*, 777 N.E.2d 763, 767 (Ind. Ct. App. 2002), to argue that "the mere offer of policy limits was sufficient to trigger application of underinsured benefits." The court in *Leybman*, however, dealt with the effect of an offer by way of an uninsured motorist and specifically did not address "whether the offer of policy limits may defeat underinsured motorist coverage." *Id.* at n.2. In the context of the case at hand, the Court finds the Sellers' argument (that the offer by the Lisa Policy to settle for its liability limits was sufficient to trigger the underinsured motorist coverage of the Henry Policy) unpersuasive. As noted above, the language of the Henry Policy's exhaustion clause is unambiguous, and because the Lisa Policy's offer was not accepted before the expiration of the statute of limitations, no payment was

made or available for immediate use; therefore, the condition precedent necessary for coverage to apply did not occur.

Thus, for the reasons stated above, the Court finds that the Sellers are not entitled to underinsured motorist coverage under the Henry Policy.

**Uninsured Motorist Coverage**

State Farm asserts that the Sellers are not entitled to collect uninsured motorist coverage under the Henry Policy because it is undisputed that Lisa was insured under the Lisa Policy at the time of the accident. In fact, State farm argues, the Lisa Policy's offer to settle with the Sellers for its $50,000 liability limit proves that she was insured and necessitates a finding that uninsured motorist coverage is inapplicable in this case. The Sellers, on the other hand, take the position that when the Lisa Policy "rescinded" their offer to the Sellers after the statute of limitations had expired as to tort claims against Lisa, the insured vehicle was "transformed" into an uninsured vehicle, which therefore "triggered" the uninsured motorist coverage under the Henry Policy. This is so, the Sellers argue, because the Henry Policy's uninsured motorist provision provides that an uninsured vehicle is one that is "not insured or bonded for bodily injury at the time of the accident" or one that is "insured or bonded for

bodily injury at the time of the accident; but . . . the insuring company denies coverage or is or becomes insolvent."

Looking first to the plain language of the policy, the Sellers' argue that the "insuring company denies coverage" language is unambiguous and, therefore, the "[d]enial of coverage by the Lisa Policy transformed the insured vehicle into an uninsured vehicle." The Court agrees that the language is not ambiguous, but for a different reason than the Sellers submit. The *Merriam-Webster* online dictionary defines "deny" as follows:

> 1: to declare untrue
> 2: to refuse to admit or acknowledge: DISAVOW
> 3 a: to give a negative answer to
>   b: to refuse to grant
>   c: to restrain (oneself) from gratification of desires
> 4 *archaic* : decline
> 5: to refuse to accept the existence, truth,
>   or validity of

*Merriam-Webster's Online Dictionary*, http://www.merriam-webster. com/dictionary/deny (last visited March 29, 2012). The disputed language must be read in the context of the entire policy, which separately defines underinsured motor vehicles and uninsured motor vehicles and provides specific coverage for each. When viewed in this context, from the perspective of a reasonable insured party, it is clear that the ordinary meaning of "denies coverage" as related to an uninsured vehicle is "refuses to admit or acknowledge coverage." Therefore, under the Henry Policy, an uninsured motor vehicle is either one that is not insured at the time of the accident or one that is insured at the time of the accident but the

insuring company refuses to admit or acknowledge that coverage. The Sellers' attempt to parse the "denies coverage" language out of the policy as a whole and, for all intents and purposes, liken it to "does not pay" makes little sense and is not reasonable.

The Court's reading of the policy language comports with Indiana's UIM statute, which defines an uninsured vehicle as:

> a motor vehicle without liability insurance or a motor vehicle not otherwise in compliance with the financial responsibility requirements of IC 9-25 or any similar requirements applicable under the law of another state, and includes an insured motor vehicle where the liability insurer of the vehicle is unable to make payment with respect to the legal liability of its insured within the limits specified in IC 9-25-4-5 because of insolvency.

Ind.Code § 27-7-5-4(a). In describing an underinsured vehicle, the statute makes it clear that an underinsured vehicle "does not include an uninsured vehicle" as defined above. Ind.Code § 27-7-5-4(b). The Indiana court of appeals has stated that the definition of 'uninsured motor vehicle' in the UIM statute is clear and that it may not be read expansively. *Whitledge v. Jordan*, 586 N.E.2d 884, 885 (Ind. Ct.App. 1992).

Again, it does not appear as though Indiana courts have addressed the issue of whether rescinding a settlement offer because the statute of limitations has expired on the underlying tort claim is sufficient to "transform" an insured vehicle into an uninsured one. However, State Farm points the Court to a West

Virginia case addressing similar issues. See *Harman v. State Farm Mut. Auto. Ins. Co.*, 434 S.E.2d 391, 393–94 (W. Va. 1993). In that case, a plaintiff filed a claim with his own uninsured motorist policy after the tortfeasor's liability policy withdrew its offer of payment because the statute of limitations had expired as to the underlying tort claim. *Id.* at 392-93. While the plaintiff argued that he was entitled to collect uninsured motorist benefits under his own policy because he could no longer collect from the tortfeasor's policy, the court disagreed. *Id.* at 393. ("We cannot agree to such convoluted logic. To permit a claim for uninsured motorist coverage in this case would make the statute of limitations, regardless of length, meaningless since a plaintiff could always turn to his own uninsured motorist policy for coverage, regardless of how long the plaintiff waited to file suit past the applicable statute of limitations.") The court acknowledged the importance of timely filing and held that "a plaintiff's uninsured motorist coverage is not available as an alternative to the tortfeasor's liability coverage when the plaintiff did not file a claim against the tortfeasor's insurance company until after the statute of limitations had lapsed on the tortfeasor's liability policy." *Id.* at 394. This Court finds the reasoning in *Harman* sound.

Here, it is undisputed that Lisa was operating an insured vehicle at the time of the accident; this vehicle was covered by

the Lisa Policy. It is also undisputed that the Lisa Policy acknowledged the existence of that coverage when it offered its liability limits of $50,000 to the Sellers. State Farm, in its capacity as the liability insurer under the Lisa Policy, did not "refuse to admit or acknowledge coverage," they simply withdrew their offer after the statue of limitations had expired without the Sellers filing suit against Lisa. These actions did not "transform" Lisa's insured vehicle into an uninsured one. Thus, the Court finds that the Sellers are not entitled to uninsured motorist coverage under the Henry Policy.

### The Sellers' Counterclaims

The Sellers bring counterclaims against State Farm in its capacity as the underinsured/uninsured motorist carrier for the Sellers under theories of breach of contract, tortious breach of the duty to act in good faith, and breach of fiduciary duty. State Farm, in its capacity as the Sellers' underinsured/uninsured motorist carrier under the Henry Policy, asks this Court to grant summary judgment in its favor on each of these counterclaims.

As discussed above, the Court has determined that the Sellers are not entitled to coverage under either the underinsured or uninsured provisions of the Henry Policy; therefore, a breach of contract action fails as a matter of law. However, the Sellers

also bring counterclaims of tortious breach of the duty to act in good faith and breach of fiduciary duty.

Insurance contracts create a legal duty on the insurer to deal in good faith with the insured. See *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 518 (Ind. 1993). The Indiana Supreme Court has recognized a cause of action for the tortious breach of an insurer's duty to deal with its insured in good faith. *Id*. at 519. The insurer's duty of good faith and fair dealing includes "the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim." *Id*. However, the cause of action for good faith and fair dealing in insurance contracts does not arise in every situation where an insurance company erroneously denies an insured's claim. *Id*. at 520. Insurance companies are allowed to make good faith disputes about the amount of a valid claim or whether there is a valid claim at all without exposing themselves to this cause of action. *Erie*, 622 N.E.2d at 520. The cause of action for bad faith and fair dealing in insurance arises where the insurer denies liability knowing that there is no rational, principled basis for the denial. *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 40 (Ind. 2002). The insured must show by clear and convincing evidence that "the

insurer had knowledge that there was no legitimate basis for denying liability." *Id*. at 40.

Indiana courts have also made it clear that there is no duty of good faith owed to a third party claimant when negotiating that party's claim; its duty lies with the party it is contracted with. *Brady v. Allstate Indem. Co.*, 788 N.E.2d 916, 920 (Ind. Ct. App. 2003). This is true even when the same insurance company is negotiating both the underlying liability claim and the underinsured motorist claim. *Id*. When evaluating an allegation of the breach of the duty of good faith, the focus must be on the insurer's actions pertaining to the claims with its own contracted party, not on its actions in its dealings with the underlying liability claims. See *Id*. at 921 ("Both parties and the trial court mistakenly focused on actions taken by [the insurer] while it was settling the underlying [liability] claim. If [the injured party] and [the tortfeasor] had been covered by separate insurers, actions taken by [the tortfeasor's] insurer in valuing and settling the underlying claim could not have been used as evidence of bad faith in a suit by [the injured party] against his UIM insurer.") In *Brady*, the court noted that things like contact between the adjustors and "[d]iscussions and attempts to settle the underlying claim for as little as possible, without more, cannot be used as evidence of [the insurer's] bad faith actions in refusing to pay the UIM claim." *Id*. at 921-22.

Thus, for purposes of State Farm's motion for summary judgment in its capacity as the underinsured/uninsured motorist carrier for the Sellers, the inquiry must focus on Wellman's handling of the Sellers' underinsured/uninsured motorist claims pursuant to the Henry Policy rather than Miller's actions in attempting to settle the claims pursuant to the Lisa Policy. Here, it is undisputed that Wellman gave the Sellers permission to accept the settlement offer of $50,000 from the Lisa Policy, but she noted that the decision was "not an admission of liability and that we specifically reserve any defense we may have regarding liability and damages." She later informed Attorney Bishop that underinsured motorist coverage was "available" but this coverage was dependant on the Lisa Policy's payment of its policy limits. Despite the Sellers' assertion to the contrary in their counterclaims and response brief, the record does not support that Wellman ever offered or agreed to "settle" the Sellers' underinsured motorist claims. Neither Wellman's requests as to the status of the overall settlement negotiations nor Attorney Bishop's correspondence with the various medical providers and lien holders constitute evidence to the contrary. Attorney Bishop's apparent assumption that both the Lisa Policy and the Henry policy would pay their policy limits (regardless of the status of the underlying tort claim) do not make it so. Furthermore, there is no evidence that Wellman ever offered or agreed to settle with the Sellers under the uninsured motorist

coverage of the Henry Policy. When Wellman learned that the Lisa Policy was no longer offering to pay its liability limits because of the statute of limitations issue, State Farm took the position that the Sellers were not entitled to the underinsured motorist coverage of the Henry Policy because the conditions precedent to its receipt had not been satisfied. When the Sellers next demanded $100,000 under the Henry Policy's uninsured motorist coverage, State Farm took the position that Lisa was not uninsured so the Sellers were not entitled to uninsured motorist benefits. The instant suit was then filed.

Here, the record shows that State Farm did not breach its duty to act in good faith when handling the Sellers' claim under the Henry Policy. State Farms position, that coverage under the Henry Policy's underinsured/uninsured motorist provisions is unavailable, is not unfounded as has been established in the foregoing sections. Their position is rational and founded on a legitimate basis. No evidence has been presented to show that State Farm deceived the Sellers or pressured them to settle their claim. There is simply no evidence that State Farm acted with a state of mind "reflecting dishonest purpose, moral obliquity, furtive design, or ill will." *Hoosier Ins. Co. v. Audiology Found. of America*, 745 N.E.2d 300, 310 (Ind. Ct. App. 2001) (citation omitted).

Furthermore, for many of the same reasons described above, the record does not support a finding that State Farm breached a

"fiduciary duty" owed to the Sellers in its handling of the claims under the Henry Policy. Although the Sellers state in their Counterclaim that "State Farm represented that it would pay the policy limits of the [Henry] Policy . . . and continued to maintain that it would pay the policy limits after the statute of limitations [related to the Lisa Policy] had allegedly expired," they provide no evidence to support this position.[6] That Attorney Bishop assumed so and did not file a claim against Lisa or her personal representative before the statute of limitations expired, does not establish that a fiduciary duty was breached by State Farm. The Court agrees with State Farm that to confer a fiduciary duty of this type, essentially "requir[ing] an underinsured motorist carrier to 'supervise' its insured's attorney and negotiations with the underlying policy to ensure the attorney's compliance with basic tenants of litigation," is not necessary or preferable. See *Brady*, 788 N.E.2d at 920-22.


## State Farm's Motion for Summary Judgment in its Capacity as the Liability Insurer for Lisa

State Farm, in its capacity as the liability insurer for Lisa, seeks summary judgment as to the claims asserted against it in the

---

[6] State Farm, did however, in its capacity as the liability insurer under the Lisa Policy, offer the policy limits of the Lisa Policy, a contract to which the Sellers were not parties. The record establishes that the Sellers did not accept this offer.

Sellers' Counterclaim. The Sellers allege claims of breach of contract, tortious breach of the duty to act in good faith, and breach of fiduciary duty. Both the Lisa Policy and the Henry Policy are referenced in the Counterclaim. However, in their response brief, the Sellers seemingly abandon these claims and indicate rather that the only "claims against the Lisa Policy are for equatable estoppel." The Court will quickly dispose of the original Counterclaims before addressing the issue of estoppel.

It is undisputed that neither Henry or Dorothy are parties to the contract between Lisa, her husband, and State Farm (i.e. the Lisa Policy), nor do the Sellers argue that they are third-party beneficiaries to that contract. As such, they are not entitled to recover from State Farm, in its capacity as the liability insurer for Lisa, under a theory of breach of contract. See *Menefee v. Schurr*, 751 N.E.2d 757, 760-61 (Ind. Ct. App. 2001). Furthermore, Indiana law has clearly established that, while an insurance company owes a duty of good faith to its insured, that duty does not extend to third party claimants. *Id*. See also *Dimitroff v. State Farm Mut. Auto. Ins. Co.*, 647 N.E.2d 339, 341-42 (Ind. Ct. App. 1995). Thus, the Sellers' claim of tortious breach of the duty to act in good faith, as against State Farm in its capacity as the liability insurer for Lisa, fails. The Sellers' breach of fiduciary duty claim fails for the same reason. See *Brady v. Allstate Indem. Co.*, 788 N.E.2d 916, 920 (Ind. Ct. App. 2003)

("[T]here is no duty or fiduciary relation running from the insurer to the injured plaintiff. The insurer's only duty is to the insured on its contract." (citing *Cromer v. Sefton*, 471 N.E.2d 700, 703 (Ind. Ct. App. 1984)).

In their Response brief, the Sellers argue that the "claims against the Lisa Policy are for equitable estoppel." To the extent that the Sellers now claim estoppel, the Court notes that this is problematic. "The rule is that an estoppel must be specially pleaded, and that strictness in pleading it is essential. No intendments are made in favor of a plea of estoppel, and it is incumbent upon the pleader to fully plead all the facts essential to the existence of an estoppel." *Midland Bldg. Industries v. Oldenkamp*, 103 N.E.2d 451, 455 (Ind. Ct. App. 1952) (citations omitted). This is true whether the estoppel is used as a cause of action or a defense, and it cannot be generally averred to in an answer. *Schill v. Choate*, 247 N.E.2d 688, 696 (Ind.App. 1969) ("[E]stoppel . . . must be pleaded with particularity and precision, with every essential fact being set forth, for nothing can be supplied by inference or intendment and, indeed, if there is any ground for inference or intendment, it will be against and not in favor of estoppel.") The Seventh Circuit stated that it is "too late in the day to be adding new claims" at the summary judgment stage when a claim of promissory estoppel was not in the original or amended complaint. *Auston v. Schubnell*, 116 F.3d 251, 255 (7th

Cir. 1997).  See also *Northwest bank, N.A. v. Federal Kemper Life Ins. Co.*, 110 F.Supp.2d 774, 778-79 (N.D.Ind. 2000).  Here, any claims of estoppel were not set forth with particularity either in the Answer or in the Sellers' Counterclaim, and are thus subject to dismissal.

Even if the Court were to consider the Sellers' argument regarding "equitable estoppel" as forming the basis of their "claims" against the Lisa Policy at this point, the Court notes that the Sellers have not mentioned promissory estoppel anywhere in their Counterclaim or response brief.  Promissory estoppel and equitable estoppel are distinct:

> While both are equitable judicial doctrines based on detrimental reliance, the former is a cause of action and the latter is a defensive doctrine used to bar the opposing party from asserting a claim or defense.  A remedial aspect of state contract law, a promissory-estoppel cause of action permits the enforcement of a promise that otherwise lacks the elements of a contract.  Promissory estoppel is a sword, and equitable estoppel is a shield.

*Peters v. Gilead Sciences, Inc.*, 533 F.3d 594, 598, n.5 (7th Cir. 2008) (quotation marks and citation omitted).  In Indiana, "the promissory-estoppel cause of action requires: (1) a promise by the promissor; (2) made with the expectation that the promisee will rely thereon; (3) which induces reasonable reliance by the promisee; (4) of a definite and substantial nature; and (5) injustice can be avoided only by enforcement of the promise." *Id.*

at 600. Even assuming that one could construe the Sellers'
Counterclaim as asserting a claim of promissory estoppel against
State Farm in its capacity as the liability insurer for Lisa, the
facts of this case do not establish such estoppel.

As noted above, the record shows that the Lisa Policy, through
Miller, offered its liability coverage limit of $50,000 to Dorothy
to settle her claims but that the release form accompanying the
offer was never signed by the Sellers or returned to State Farm.
Later communications sent from Miller to Attorney Schlax establish
that State Farm did not receive a response from the Sellers and
wished to inquire as to the Sellers' position regarding the offer.
Once Attorney Bishop began representing the Sellers, he sent a
letter to State Farm indicating that he understood that State Farm
was "willing to offer" the liability coverage limits of $50,000
under the Lisa Policy to settle the claim. He noted that he was
attempting to negotiate with the medical providers and lien
claimants and indicated that he would advise State Farm of his
progress in "resolving the matter" so that "we might reach a final
settlement with all concerned." Additional communications
established that Attorney Bishop was continuing to work on the
"potential settlement." Over a year after the statute of
limitations had expired, Attorney Bishop copied State Farm on a
letter to the lien holders stating that he "now offer[ed] the
following settlement proposal to resolve all pending claims against

the State Farm combined policy limits of $100,000." After learning

that the Sellers had not filed suit against Lisa or her personal

representative, Miller advised Attorney Bishop that because the

statute of limitations had expired, the offer was no longer

available. Miller never indicated that the offer would remain open

indefinitely or that State Farm in its capacity as the liability

insurer for Lisa would be willing to pay the Lisa Policy's limits

after the statute of limitations had expired. There is no evidence

that State Farm ever offered to toll the statute of limitations or

agreed not to assert it as a defense related to the Sellers'

claims. The Sellers have presented no evidence to show that such

a promise was made. An offer to settle and subsequent negotiations

do not serve as a promise which would reasonably induce the

Sellers, who were (and are) represented by Attorney Bishop, to

refrain from filing an action against Lisa in tort prior to the

statute of limitations. Therefore, as a matter of law, promissory

estoppel has not been established.


CONCLUSION

For the reasons set forth above, State Farm's Motion for

Summary Judgment, filed by Plaintiff/Counterdefendant, State Farm

Mutual Automobile Insurance Company, on May 9, 2011 (DE #20), is

**GRANTED IN FULL.** The Motion for Summary Judgment on Behalf of

State Farm in its Capacity as the Liability Insurer of Lisa

Sellers, filed by Plaintiff/Counterdefendant, State Farm Mutual Automobile Insurance Company, on May 13, 2011 (DE #24), is also **GRANTED IN FULL**. The Sellers' Counterclaims are **DISMISSED WITH PREJUDICE** in their entirety, and the clerk is **ORDERED** to close this case.


DATED:     March 30, 2012                    **/s/ RUDY LOZANO, Judge**
                                             **United States District Court**